By the Court. Woodruff, J.
It is unnecessary to enlarge upon the proposition that individuals may, if they think proper, bind themselves personally to the performance of-any engagement, although they are in truth acting on the behalf or for the benefit of others—and when, bn the face of an Instrument, they profess, in terms, to bind themselves, and neither, in terms nor by implication bind any other person, or if in form they bind themselves, then, whether any other is or is not also -bound, they are liable. In this complaint and in the agreement set-forth, the defendants are described as a Committee of Management of the Italian. Opera. But the languagé of the agreement is, they “ bind themselves.” What the office or duty of a committee of management may be we cannot say—it is here, at most, a descriptio personarum. It does not import any authority to contract for any other person, or persons, or corporation—it does not imply thát any other persons will be bound by their acts but themselves, nor does it purport to bind any other person, or persons, or cor? poration to do or perform anything.
I cannot hesitate in saying that, if the agreement set forth was binding upon the defendants in. any sense, it was a ctintraet binding them personally to its performance.
.In-considering whether the agreement, in question, sufficiently indicates by whom and to whom the payments are to be made, it is proper to observe that by the rule which requires certainty in-a-contract, courts are not called upon to exercise great ingenuity, and - become' astute to find or suggest a doubt of its mean? ing. . If, when read in connection with the whole subject matter to which it. relates, and according to the ordinary and natural acceptation of the terms employed, the intention is clear, that in? tention is to prevail; and this is true, even where the language is ambiguous, if the intention be obvious.
Again, in an agreement, between two, stipulating for the payment of money, if it plainly appears which of the two is to pay, it follows not merely as the natural, but as the sound legal con *53 struction of the instrument, that the other is to receive the payment, unless the agreement itself provides that the payment shall be made to some other person; e.g., if in a contract, between A. and B., it is agreed, that A. shall pay one thousand dollars, and that B. shall deliver one thousand bushels of wheat, no one would hesitate to say, and no court would hesitate to adjudge, that it was the manifest intention, that A. should pay the money to B., and that B. should deliver the wheat to A.
Does this contract show by whom the respective instalments of $2,000 a week are to be paid? It does, as I think, very plainly.
When first named, the language is, “ that the following sums are to be paid at the rate of $2,000 per week,” &c. But when we look a little'further, in the agreement, we find that a farther sum is to be paid by the parties of the second part. How are they to pay a farther sum unless they also are to pay the first?
Not only this, but, in the succeeding clause, we find that, in consideration of these stipulations, the artists are to be transferred, and certain contracts assigned to the parties of the second part; that is, according to the obvious meaning, the parties of the second part are to receive the transfers and assignments, in consideration of the stipulation for the payments, and these are of course to be -made by them, else the stipulation for the payments could constitute no consideration for what they are to receive. Words might be multiplied upon this point, but it seems to me that no intelligent and unbiassed mind can read the agreement without declaring, without hesitation that, the intention is plain that, the parties of the second part (the defendants) are to pay the $2,000 per week, as they, in express terms, agree that they will the farther sum also mentioned.
Nor does it appear to me less certain to whom the payments are to be made. I have already said that if it be clearly ascertained by which, of the parties, the payment is to be made, it follows that the payment is to be made to the other, unless the agreement points out some other person, who is to receive the payment.
In addition to this, the covenant, made in consideration of the agreement to pay, binds the party of the first part, (the plaintiff), to a transfer and assignment of the contract to the parties of the second part. It is the reasonable and natural inference that the payments, in consideration of which he enters into that engage *54 ment, are to be made to him. And it does not appear, either in terms, nor by any obvious implication, that the payments in question are to be made to any other person. While on the other hand, when a payment, to a third person, was contemplated, totally different language was used; thus “ the balance of the rent agreed to be paid to Mr. Niblo, say $2,250, is to be assumed by them.”
It was suggested, on the argument of the appeal, that because in making up the aggregate, which was to be paid by the instalments stipulated, the sums are spoken of as advances made by the parties of the first part,—which should be taken to mean not only the plaintiff, but those on whose behalf he acted,—that therefore it is to be implied that the payments were to be made to the particular persons who made the advances—and as to the back rent, that it should be paid to Niblo, &c.
In the first place, this construction is not at all necessary to make the agreement intelligible, nor the necessary import of the language. If the plaintiff, acting as trustee for the other persons, bound himself to the performance of acts, affecting the interest of those for whom he was trustee, and especially if, for the performance of his agreement, he would find it necessary to have their co-operation, it was natural that he should require, that the means should be placed in his hands, which would not only enable him to protect their interest, but which he could control, so far at least,' that he might make it available, in procuring their co-operation—making himself personally liable, he might naturally provide, that he should control the consideration, so far, that if his performance failed for the want of such cooperation, he would not both lose the consideration and remain liable on his agreement.
But what seems to me decisive upon this question is, that the sums agreed to be paid were instalments of one aggregate sum; if the money was to be paid to several, and the amounts each was to receive were different, they would have been specified. This paying by instalments cannot be reconciled with the construction contended for. There is no one of the three items making up the $16,750, to which the first, or the second, or any other of the instalments was applicable. To say that these instalments were not to be paid to the plaintiff, is to place the *55 defendants in a situation, in which, they could not pay if they would, and so to make the agreement void. A construction tending to this should not be adopted, if any other construction is rational, and tends to accomplish the intention of the parties. Besides, it seems to'me quite obvious, that the description of the items, making up the aggregate of $16,750, was used as matter of mere description, and not, at all, as a designation of persons to whom the defendants were to make the payments.
Many of these suggestions, if not all, apply to the stipulation that “ a further sum ” of $5,000, as an indemnity to Isaac Jacobsohn, is to be' paid in two notes, of equal amounts, at six and eight months, by the parties of the second part. The nature and object of the indemnity, mentioned as the purpose which these notes were to serve, is not stated, and what damages have been sustained, by the non-delivery of the notes, does not perhaps appear; but it seems to me far from doubtful that the parties intended that the notes should be given to the plaintiff. The language does not import that Jacobsohn should receive them; his indemnity might never require that he should even have the benefit of them. The same reasons, that made it proper that the plaintiff should receive the other payments, would also suggest that he should receive the notes. He gave the consideration, i.e. he bound himself that the consideration should come to the defendants, and the words used do not indicate that their performance was not to be to him directly.
It is no unnatural reading of this part of the agreement that the plaintiff was made the recipient or depositary of the two notes, the puqpose and object of which notes was explained to be Jacobsohn’s indemnity; and it may be said that the plaintiff was to see to the application of the notes, or the proceeds thereof, to that object. The reference to Jacobsohn seems not for the purpose of designating to whom the notes should be given, but the reason why they were given, and perhaps the purpose to which the plaintiff, as trustee, should apply them. The whole scope, and to my mind, the obvious meaning of the agreement, indicates that the plaintiff (whether with or without authority) assumed to act on the behalf of Jacobsohn and others not named, and to bind himself personally to accomplish certain results beneficial to the defendants, in consideration of their agreement *56 to pay to him, for the benefit of those for whom he acted, the money and notes stipulated for. That he acted, in this, as the trustee for those who were beneficially interested in the matters to which the agreement relates.
In this aspect of the agreement the plaintiff answers perfectly the definition of a trustee of an express trust in section 113 of the code of procedure, viz: “a person with whom or in whose name a contract is made for the benefit of another.” And this seems to me to define his position in reference to all the payments stipulated for in this agreement, and to dispose of the objection that, other parties (for whose benefit the agreement was made) should have been joined in the action, either as plaintiffs or defendants.
Surely if the agreement in relation to the notes, instead of reading, “ as an indemnity to Isaac Jacobsohn,” had read, “ for the benefit of Isaac Jacobsohn,” the case would not be less strong for the defendants, and yet that would be in the very terms of the section of the code referred to; and in such case, the code provides that the trustee may sue in his own name, without joining with him. the person for whose benefit the action is prosecuted.
It is suggested that, a payment or delivery of the notes directly to Jacobsohn would satisfy the agreement, and that the complaint does not aver that such payment has not been made. This proceeds upon the assumption that on an agreement to pay to one for the benefit of another, payment directly to such other is a performance of the agreement, and this is not, in my apprehension, true. At law it is no performance at all; in equity such an agreement may be enforced by the person beneficially interested, but he could not sue upon the agreement, at law, unless he showed that, the relations between him and the party in whose name the contract was made were such that, it was, in law, an agreement with himself. This latter class, of cases are numerous, (see Union Ind. R. Co. v. Tomlinson, 1 E. D. Smith, 364), but it is unnecessary to dwell upon them, because there are also many cases in which, although it be true that he, for whose benefit the contract is made, may sue at law upon it, so also may he, in whose name it is made.
And where in.fact a contract is made with a trustee, as such, he could always sue thereon in his own name. *57 Besides if the suggestion that a delivery of the notes might be made to Jacobsohn be conceded, it amounts only to this, that the defendants may defend the action by showing that the notes have been so delivered; it is matter to be set up affirmatively by the defendant, which the plaintiff is not bound to anticipate and deny.
In regard to the alleged want of consideration, moving to the defendants, arising from the failure of the plaintiff to show any authority to contract; Much that has already been suggested bears upon this ground of demurrer and tends to show that it is without just foundation. It must suffice to add that, on the face of the agreement, the plaintiff bound himself that certain artists should be transferred and certain contracts assigned. This agreement is alone consideration enough to support the counter-agreement by the defendants, unless the agreement on his part was illegal or impossible of performance. Here is no pretence that the things which the plaintiff agreed should be done were illegal. An agreement cannot be said to be impossible because for its performance the concurrence of a person or persons not parties to the agreement is necessary. In such case, the agreement imports that the party binding himself will cause it to be done; it assumes the employment only of legal and proper means for its performance; that those means will be used by the agreeing party, and he guarantees that those means shall be effectual; if not, he is liable for a breach of the agreement.
A. may covenant that certain land shall be conveyed to B. on a day specified, B. paying to A. a sum of money. Such an agreement is neither illegal nor, in judgment of law, impossible, because at the making of the covenant the land is owned by C. The construction of such an agreement is that, for the consideration agreed to be paid, A. will cause the land to be conveyed to B., and A. takes the hazard of being able to accomplish that result.
So here, the plaintiff agreed that the artists should be transferred and the contracts assigned. He undertook to cause it to be done, and the fact, that the assent or concurrence of the artists or of those who held the contracts, must be procured to enable him to perform, did not make the obligation to perform any less his obligation. He took the hazard of accomplishing all that was *58 requisite to the complete performance of what, by the terms of the agreement, was due to the parties of the second part, the defendants.
The views last suggested have an important bearing upon the objection that, performance of all that was due to the defendants was a condition precedent to their obligation to pay, and that such performance is not sufficiently alleged.
The defect in the allegation is claimed to be this, that, it appears that the transfer of the artists and the assignment of the contracts necessarily required that persons other than the plaintiff should perform, and that the plaintiff was bound to state in detail what they did, because the Code, § 162, only warrants a general statement of the performance of conditions precedent which are to be performed by the plaintiff himself.
The language is that “in pleading the performance .of conditions precedent in a contract, it shall not be necessary to state the facts showing such performance; but it may be stated generally that the party duly performed all the conditions on his part.”
It seems to me the most reasonable construction of this section to say that, “ party ” here means the person or persons by whom the conditions were to be performed—certainly it does not necessarily mean the plaintiff in the suit; if it did then the assignee of a claim founded on such a contract, could not avail himself of the benefit of the section where the conditions had been performed by the person with whom the contract was made. Nor must it necessarily and invariably be the person who is the party to the contract, for it may often be true that the interest in a contract being assigned to another, he performs all the conditions and is entitled to the payments. We are instructed by the Legislature to construe the allegations in a pleading liberally with a view to substantial justice between the parties, (Code, § 159). And again it is enacted (§ 467) that the rule, that statutes in derogation of the common law, are to be strictly construed, has no application to the code.
Unless, then, we are critical, to a degree which would exclude the operation of this section 162, from large classes of cases which are in all respects within its spirit and general intent, and unless we must adhere to a purely strict and technical interpre *59 tation. of its words when, no beneficial purpose renders it necessary—unless indeed, we undertake to give to the word, “ party ” a meaning which it does not necessarily require, in order to restrict the application of the section to as few cases as possible, and leave the inconvenietice the section was designed to remedy to exist in as many cases as possible, we must say that the section means that, it may be stated generally that the person or persons by whom the conditions were to be performed, have duly performed, &c.
This construction of the section is not, however, necessary to the maintenance of the averment in question. Here the averment is made by one who is both a party to the suit and a party to the contract; he agreed that the artists should be transferred and the contracts assigned; if any concurrent action of others was requisite to the performance of his engagement, he was to procure that concurrence. He made the agreement that it should be done. When, therefore, he avers that he has fully and faithfully performed all and singular the covenants, &e., on his part, he does aver that every thing was done which he was bound to do or to cause to be done; and he only strengthens this covenant when he adds that those on whose behalf he acted, have also performed. In no aspect can the addition of this statement impair the effect of his averment, though I think it was not necessary.
The claim that, under the agreement set forth in the complaint the defendants assumed no obligation except to execute another. more formal instrument, and that there being no averment of a request and refusal no breach is alleged, admits of a twofold answer.
It is not apparent from the tenor of the stipulation, that it contemplated anything more than such further assurance as might be found necessary—not to define and settle the rights of the parties under the agreement then reduced to writing—but to effect the full accomplishment of “ the purpose and intent of the object of the agreement ”—i. e. the ultimate motive which led to the making of the agreement.
But another answer seems quite sufficient. So far as appears by the contract before us, all the rights and obligations of the parties were defined and settled by what was then writtem In *60 order to the binding character of the obligations of the parties, no further writing was necessary, and the court will never say that a party shall not recover upon a valid binding contract, merely because the parties, at the time it was written, contemplated making another agreement of the same purport; the making of the latter in such case would be a work of supererogation, wholly immaterial and superfluous as to either of them.
And once more, if any act of this sort was necessary to entitle the plaintiff to claim performance by the defendants, i. e. if in any just sense his execution of such further agreement was a condition precedent to his right to demand the payment, then bis averment of the performance of all the conditions, covers this condition with the others.
The objection that those parts of the complaint which are denominated farther causes of action, are incomplete in themselves and, read separately, show no cause of action, was not strenuously insisted upon, on the argument, of the appeal. The points submitted treat them like separate counts in a declaration under our former system of pleading. They are more properly to be regarded as separate breaches of the one agreement set forth in the complaint. In that respect they are like the common practice of alleging several breaches in a single count in the former action of covenant broken.
The pleader here, has chosen to call each a further cause of action; in one sense they are. They are substantive grounds of recovery upon the agreement which is set forth, and to which each in terms refers. It was, perhaps, unnecessary to call them separate causes of action: but at most, that was an immaterial designation of what are very plainly nothing more than alleged several breaches of the one agreement referred to. To require the pleader to repeat the averments, setting forth the making of the agreement, and its performance on the part of the plaintiff before each statement of a breach, would not only be requiring what was wholly unnecessary before the code, but would be requiring a useless repetition, which the code in terms forbids. § 142.
What has already been said in relation to the right of the plaintiff to sue in his own name, (under § 113,) without joining those for whose benefit the contract is made, and his right to *61 require that the payments be made to himself, disposes of the objection that, there is a defect of parties, as well as the suggestion that, causes of action are improperly joined.
The order appealed from should be affirmed with costs.
Duer, J., dissented.