## CRIMINAL CASES.*

### COMMONWEALTH *vs.* PATIENCE COOPER.

Declarations made by a deceased person when he believed that he should not recover may be admitted in evidence, although he lived seventeen days after making them.

After evidence that the defendant in an indictment has requested a witness to swear falsely to facts tending to prove an *alibi*, he cannot be allowed to show that upon a full investigation the selectmen of the town where he lived had before that time assured him that they were satisfied of his innocence.

Declarations of the defendant in an indictment to one who was searching his house after the commission of the crime are not admissible in his own favor.

If dying declarations have been admitted to prove the identity of the defendant as the person who committed a crime, evidence is admissible in reply to show that the deceased had met and talked with persons with whom he was well acquainted, mistaking them at the time for other persons whom they did not resemble, and that he was in the habit of thus mistaking persons.

INDICTMENT for manslaughter in killing Phebe Fuller by striking her upon the head with a certain instrument called a " fid."

At the trial in the superior court, before *Brigham,* J., it appeared that Phebe died on the 12th of December 1860 in consequence of wounds and injuries inflicted upon her by some .

---

* METCALF, J. sat at the hearing of the criminal cases.

person at her home in Nantucket, on the evening of November 22, 1860. John H. Sherman, the physician who attended her, testified that on the morning of the 25th of November she told him that she should never be any better, or should never recover; that he told her he hoped she might, that she was better; and that she replied that she had received a mortal injury Nathaniel Fitzgerald, called as a witness on the part of the Commonwealth, testified that a little after noon on the 25th of November he called to see Phebe; that she said she could not live, and had sent for him to make one request, and said: " I cannot live, let no one follow me to the grave; I am principled against it." The witness was then allowed to testify, under objection, that Phebe stated to him that Patience Cooper committed the deed; that she came in and said, " How do you do ? I have come to pay my bill," and the deceased got up to snuff the wick of the lamp, when Patience struck her.

There was evidence on the part of the Commonwealth that shortly after the 22d of November the defendant asked William Simmons if he would not go to court and swear that on the evening of that day he went through her yard and saw a light in her house, saying that there would be no harm in it. To control this evidence, the defendant offered evidence that before the time when she said this to Simmons the selectmen of Nantucket had assured her that upon a full investigation they were satisfied of her innocence; but the evidence was rejected.

Alfred Macy, one of the selectmen, and a witness for the Commonwealth, testified on cross-examination to a search and examination of the defendant's house and its contents; and the defendant offered to prove by him her declarations to him at the time of this search as to where she was on the evening of November 22; but the evidence was rejected.

The defendant offered to prove by several witnesses with whom Phebe was well acquainted that she had met them and talked with them, mistaking them at the time for other persons whom they did not resemble, and that she was in the habit of thus mistaking persons; but the evidence was rejected.

to regard this paper as the agreement of the defendant, signed by him.

But on the same day the defendant wrote a letter to Mr. Baylies, stating the terms of the compromise particularly. This letter was signed by him, and appears by the facts to have been an acceptance of the offer made by Mr. Baylies in New York, with the addition of some details ; and on the 26th of April Mr. Baylies replied to it, acknowledging its receipt, and by implication assenting to its terms.

There is a material difference between the terms of the contract drawn up by counsel and the terms of the defendant's letter, which seems not to have attracted the notice of counsel at the time. The contract provides for a conveyance by the defendant to the heirs of Baylies of an undivided fourth part of the estate, real and personal, simultaneously with the probate of the will. If this agreement had been signed, and its terms complied with on the part of the plaintiffs, a bill might have been maintained for its specific performance immediately after the probate. But the letter to Baylies agrees to pay the proceeds or value of one fourth part of the estate in cash. Its language is, " to pay over to you and them, when in cash, one fourth of the net proceeds of the same." The net proceeds cannot be ascertained till after the final settlement of the estate by the defendant as executor. The expenses of the last sickness and the funeral and of administering the estate must be first deducted ; and if the testator left debts, they must be paid. A reasonable time must also elapse to ascertain whether any debts exist. Strictly speaking, the defendant has nothing to do in the fulfilment of such a contract until after he shall have settled the estate as executor, or at least till he shall have had a reasonable time to settle it. This bill cannot therefore be maintained on the ground that the plaintiffs are entitled to the specific performance of a contract which has been broken by the defendant. This was the ground on which the case was put at the first argument. But at a second argument, after the court had decided that the letter of the defendant to Baylies constituted the contract, another position was taken, namely, that the bill might

be maintained for the purpose of declaring and enforcing a trust. This position requires the discussion of several new questions.

Upon consideration, the court are of opinion that a trust is created by the contract. Lord Thurlow, in *Legard* v. *Hodges*, 1 Ves. Jr. 478, states the maxim to be universal, " that wherever persons agree concerning any particular subject, that, in a court of equity, as against the party himself, or any claiming under him voluntarily, or with notice, raises a trust." Here the property bequeathed to the defendant is the subject of the contract, and he is bound to deal with it in good faith for the benefit of the plaintiffs, to the extent of one half its value. In the sale and in accounting for the proceeds, he acts as trustee for them. And in the mean time, so far as is necessary, he should preserve it for them.

The doctrine, as stated in 2 Spence on Eq. 860, is, that there must be an agreement to pay out of a particular fund, amounting to an appropriation of a part of the fund for the purpose. This describes the present case; and the defendant is to be regarded as the trustee of the plaintiffs to manage and sell the property and pay over to them their share of the proceeds.

But an objection is here interposed, that the plaintiffs have not performed the contract on their part, and for that reason are not entitled to require its performance on the part of the defendant. On this point the court have never entertained any serious doubt. Within a reasonable time after the matter was understood, the plaintiffs filed in the probate court an assent to the probate of the will. No opposition to it was ever actually made in court by them. The case was continued by consent, and then the will was proved.

If, however, this constituted the whole case, we should have thought the bill ought to be dismissed. The plaintiffs contend that it could be maintained for the purpose of declaring the trust; but we do not think the mere declaration of a trust, where it consists merely of deciding that a certain contract has been made, and that it creates a trust, is a sufficient ground for maintaining a suit. Nor is it sufficient, even if the defendant

The decree of specific performance is a matter of discretion. 2 Story on Eq. § 769.

The defendant entered into no agreement as executor. The trust of executor had not been assumed at the time. If he had declined that trust, the administrator with the will annexed could not have carried out or recognized the agreement. The agreement, if any was made, was made by the defendant in his private capacity. No express trust was created. No intent to create such trust appears in the letter itself. The last paragraph of the letter shows that the plaintiffs were to rely on the defend- ant's personal responsibility. There is no implied trust. The law never implies a trust, but in case of absolute necessity. *Cook* v. *Fountain,* 3 Swanst. 585, 591. The agreement in the letter does not come within what is sometimes said to be a rule of equity, that an agreement as to a specific existing subject matter raises a trust. The agreement concerns a share in the residuum under a will not then admitted to probate, and which, notwithstanding the agreement, might never be admitted to probate ; an interest which the defendant might thereafter pos- sess, at a future day uncertain. A contract as to a thing that may be afterwards acquired does not create a present lien or trust in the thing itself. *Kirwan* v. *Gorman,* 9 Irish Eq. 154, and cases cited. If no trust was created, or specific lien, the bill is premature, and the allegation that the defendant is about to leave the country is immaterial. It is not alleged that the intended departure is with a view to evade the process of the court, or that it will tend to impair the plaintiffs' security, or that the defendant has purposed to refuse to yield to their claim, if judicially established. It is, therefore, the ordinary case of a disputed legal claim. 2 Story on Eq. § 1470, *n.*

CHAPMAN, J. The principal questions submitted to the court in this case are, whether any agreement has been concluded be- tween the parties; and if so, what are its terms ? It appears that the defendant gave notice of his intention to prove the will of Ruth Payson in the probate court on Monday the 23d of April 1860, and that Mr. Minot was retained as his counsel to transact the business. On Friday, April 20, Mr. Hoffman, one

41 *

of the plaintiffs, called at Mr. Minot's office, and notified him that he intended to oppose the probate of the will on account of the heirs of Mrs. Baylies, one of whom was his wife. On Monday the defendant called and gave Mr. Minot notice that his nephew, E. Lincoln Baylies, whom he had seen in New York, had made objections to the will, and had made a proposition for a compromise, on the basis that he and his sisters (Mrs. Hoffman and Mrs. Livingston) should receive one quarter of the estate ; that he had agreed to give an answer on his return to Boston, and had done so or was about to do so by writing a letter to Mr. Baylies accepting the proposal.

The defendant was then informed of the interview of Mr. Minot with Mr. Hoffman, and that Mr. Parker had been retained to oppose the will, and was advised that they should be informed of the proposed settlement ; and with his approbation Mr. Minot went to Mr. Parker's office, where he found Hoffman also, and informed them that the defendant had accepted the proposal of Baylies, and that the matter would be settled in that way. The reply was, in substance, an assent to such a settlement on the part of parties then in Boston, and an agreement to write or telegraph to New York for its acceptance by parties there. The will was not proved on that day ; and on the following day Mr. Hoffman informed Mr. Minot that he had received a telegram from New York, informing him that the compromise was assented to by the parties there. It was then proposed and assented to by the counsel on both sides that the agreement should be put in writing ; and a contract was drawn up, with which they were mutually satisfied, expressing what they regarded as the terms of the agreement. It was to be signed and sealed by the parties. Mr. Minot sent the paper to the defendant that day, with a note informing him that it was correct, and that it would operate to save the necessity of calling more than one witness to prove the will, and stating also the effect of the agreement. On the same day the defendant returned the paper to Mr. Minot, declining to sign it, stating his reasons for doing so, and informing him that he had written to Mr. Baylies, and that no other document was necessary. It is impossible, therefore,

to have the trusts declared, and the fund protected and the trusts executed under the direction of the court. 1. To have the trusts declared. Lewin on Trusts, 609, and cases cited. *Waller* v. *Fowler*, Sausse & Scully, 274, 294. *Hanly* v. *Sprague*, 20 Maine, 431. A bill may even be brought to have the right of a claimant in remainder declared during the life of the tenant for life. *Knight* v. *Knight*, 3 Beav. 148. *Dorchester* v. *Effingham*, Ib. 180, *n.* *Prevost* v. *Clarke*, 2 Madd. 458. *Lorillard* v. *Coster*, 5 Paige, 172. *Hawley* v. *James*, Ib. 318. 2. To have the fund protected. 1 Story on Eq. § 604, and cases cited. Lewin on Trusts, 609. And where the trust fund is endangered by a denial of the trust by a trustee about to leave the country, and there is no remedy at law, there is a very strong ground of interference. Lewin on Trusts, 609. *Leake* v. *Leake*, 1 Jac. & Walk. 605. *Scott* v. *Becher*, 4 Price, 346. *Clark* v. *Flint*, 22 Pick. 231. 3. The court should take the supervision of the execution of the trusts. Hill on Trustees, 190, 191, *n.*, 548.

*B. F. Thomas & G. F. Hoar*, for the defendant. The plaintiffs are not entitled to the aid of a court of equity, because the whole consideration which induced the defendant's offer has failed and can never exist. If this will had been defeated, the will of 1846 would have been in force. But the evidence shows that the testatrix was of sound mind. The sole motive of the defendant, therefore, was to avoid a public family controversy.

But no contract is disclosed, in respect to which the plaintiffs can have relief. The unexecuted memorandum clearly was not such a contract. Nor did the transactions between counsel amount to a contract. No contract was formed by the correspondence. The defendant's letter of April 24 required an acceptance, to become binding. If such acceptance might have been inferred by the letter of Baylies of April 26, in connection with the reply of April 28, the inference was entirely negatived by Parker's letter of April 30. Besides, what was offered by one party was not accepted by the other, in the same sense. The minds of the parties never met. The terms offered by Payson are set forth in his letter. The terms which the plaintiffs in-

tended to accept are embodied in the unexecuted memorandum. These terms were different, in various respects. See *Thornbury* v. *Bevill*, 1 Y. & Coll. Ch. 554. The acts of the plaintiffs until May 21 form a bar to the relief sought by them. Induced by them, the defendant withdrew his original offer, and prepared to establish the will. These acts may be regarded as an admission by the plaintiffs that no contract had ever been concluded between the parties, on which the defendant acted; or as an abandonment and rescission of such contract. A parol waiver is a bar. *Price* v. *Dyer,* 17 Ves. 356. *Robinson* v. *Page*, 3 Russ. 114. *Brooks* v. *Wheelock*, 11 Pick. 439. And a contract may be rescinded by acts and conduct, without an express agreement to that effect. *Goodrich* v. *Lafflin*, 1 Pick. 57. *Hill* v. *Green*, 4 Pick. 114. If a bargain was ever completed, the plaintiffs were bound to withdraw all opposition to the will. The proposal of April 24th was made under a misapprehension of the defendant's rights. It was founded on his belief that the whole estate, real and personal, came to him as executor. The plaintiffs have not alleged and proved a precise and certain contract, which is essential to entitle them to relief. *Boston & Maine Railroad* v. *Babcock*, 3 Cush. 228. *Tatham* v. *Platt*, 9 Hare, 660. If any contract was ever completed, the plaintiffs have not performed their part of it. *Calverley* v. *Williams*, 1 Ves. Jr. 210. *Higginson* v. *Clowes*, 15 Ves. 516, and cases cited. *Neap* v. *Abbott*, Coop. Pract. Cas. 333. *Manser* v. *Beck*, 6 Hare, 74. *Colson* v. *Thompson*, 2 Wheat. 336. *Kendall* v. *Almy*, 2 Sumner, 278, 295. *Carr* v. *Duval*, 14 Pet. 77, 83. They continued openly to deny the validity of the will, and endeavored to collect evidence to establish its invalidity. See also *Myers* v. *Watson*, 1 Sim. (N. S.) 523. An acceptance, to be binding, must be clear and unequivocal. Fry on Specif. Perf. § 167. *Warner* v. *Willington*, 3 Drewry, 523. *Thomas* v. *Blackman*, 1 Colly. 301. If one party gives notice that he does not hold himself bound to perform, and will not, and the other makes no prompt assertion, he will be considered as acquiescing in the notice. Adams on Eq. 88. *Walker* v. *Jeffereys*, 1 Hare, 341, 348, and cases cited. *Rogers* v. *Saunders*, 16 Maine, 100.

counsel, and became satisfied that they could not successfully contest the will; that at the time when the will was proved, he appeared with his counsel, who stated that he did not desire to recognize the assent of the plaintiffs, or to depend thereon in any degree, but wished to produce such evidence as would satisfy the court, without such assent, and thereupon all the witnesses to the will were called and examined, and upon their testimony the will was admitted to probate; and that it is true that the defendant is about to depart from the United States, but not with the intention not to return. In relation to various other matters alleged in the bill, the answer either admitted the same, or professed the defendant's ignorance thereof.

At the hearing, before *Hoar*, J., the plaintiffs introduced the testimony of William Minot, Jr., and Francis E. Parker, and the defendant introduced the testimony of Charles Devens, Jr., and the deposition of Francis Payson, upon various of the matters alleged in the bill and answer. Mr. Minot testified to various interviews and negotiations, letters and agreements, substantially as set out in the bill and answer. Mr. Parker testified that he first knew of the correspondence between Baylies and the defendant a few days before the 21st of May, and never was authorized to waive any agreement for a compromise. He also testified to negotiations with the counsel of the defendant as to the time for the hearing upon the question of the probate of the will, before and after the 21st of May. The case was thereupon reserved for the determination of the whole court; was argued in November 1861, when it was decided that the bill was prematurely brought, for the purpose of enforcing specific performance of the alleged agreement; and again in November 1862, upon the question whether the bill might be maintained for the purpose of declaring and enforcing a trust.

*B. R. Curtis & F. E. Parker*, for the plaintiffs. The plaintiffs made a definite proposal, through Baylies, to forego their opposition to the will, and receive from the estate the same share as the defendant; the latter took time to consider their proposal, and promised to write to Baylies his decision; and in pursuance of this promise wrote the letter of April 24, declaring in terms

that he had consented. This letter made a concluded agree-ment to share equally with the plaintiffs what was given to him by the will. He makes no new conditions. The other ex-pressions in the letter do not vary the effect of this language, which clearly expresses the union of two minds, agreeing upon a definite thing. The respondent understood it as a concluded agreement at the time. And upon this question, whether there was an agreement arising out of the written correspondence, and the uncontroverted facts accompanying it, the subsequent acts and declarations of the plaintiffs' counsel are unimportant. *Rowland* v. *Phalen*, 1 Bosw. 43. Nor can these acts and decla-rations be considered as a waiver of the agreement, because he was ignorant of the correspondence now in the case, which con-tains the agreement. He did not know that the defendant had already signed a sufficient memorandum. This being an agree-ment for a family compromise, fairly made, a court of equity will uphold it with a strong hand. 1 Story on Eq. §§ 131, 132, and cases cited. No waiver or abandonment of the agreement was shown. *Robinson* v. *Page*, 3 Russ. 114. *Carolan* v. *Bra-bazon*, 3 Jones & Lat. 200. *Fowle* v. *Freeman*, 9 Ves. 351. *Thomas* v. *Dering*, 1 Keen, 740. *Rowland* v. *Phalen*, 1 Bosw. 43. Even if it be viewed as a proposal by the defendant, it was assented to in writing by the plaintiffs. It was also assented to by parol, by telegraph ; and a parol assent to a written proposal is sufficient. *Boston & Maine Railroad* v. *Bartlett*, 3 Cush. 224. *Old Colony Railroad* v. *Evans*, 6 Gray, 25. *Foster* v. *Boston*, 22 Pick. 33.

The agreement created a trust in the defendant to have the estate apportioned between himself and Mrs. Mulliken, and to pay over to the plaintiffs one half of his share. *Wylie* v. *Coxe*, 15 How. (U. S.) 415. *Maxwell* v. *Whieldon*, 10 Cush. 221. 1 Story on Eq. § 132, and cases cited. 2 Story on Eq. §§ 1044, 1231, and cases cited. *Legard* v. *Hodges*, 1 Ves. Jr. 477. *Clarke* v. *Southwicke*, 1 Curtis C. C. 299, and cases cited. The defendant denied the existence of the trust, and was about to leave the country. Under these circumstances, the plaintiffs had a right to file their bill and obtain the aid of a court of equity

the house. But the cases are very different. The bank stock being pledged as collateral did not stand in the name of the testator, and would not be in his possession at the time of his death. It was, therefore, a matter of wise precaution to insert a special direction to his executor concerning its redemption. No such direction was needful concerning the real estate, the title to which stood in the name of the testator. Besides; if he had intended that bank stock should be used to pay off the mortgage debt, it is reasonable to suppose that he would give such direction, when he was making provision concerning the redemption of it from the pledge to which it was subject.

## CRIMINAL CASES.*

Declarations made by a deceased person when he believed that he should not recover may be admitted in evidence, although he lived seventeen days after making them.

After evidence that the defendant in an indictment has requested a witness to swear falsely to facts tending to prove an *alibi*, he cannot be allowed to show that upon a full investigation the selectmen of the town where he lived had before that time assured him that they were satisfied of his innocence.

Declarations of the defendant in an indictment to one who was searching his house after the commission of the crime are not admissible in his own favor.

If dying declarations have been admitted to prove the identity of the defendant as the person who committed a crime, evidence is admissible in reply to show that the deceased had met and talked with persons with whom he was well acquainted, mistaking them at the time for other persons whom they did not resemble, and that he was in the habit of thus mistaking persons.

